# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

BRENT JAFFEE,

*Defendant.*

Criminal Action No. 19-88 (RDM)

## MEMORANDUM OPINION AND ORDER

Defendant Brent Jaffee seeks revocation of the magistrate judge's April 5, 2019 order

directing that he remain in custody pending trial.  Dkt. 9.  Jaffee was arrested on March 27, 2019,

Dkt. 4, and charged by indictment with Unlawful Possession of a Firearm and Ammunition by a

Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in

violation of 18 U.S.C. § 922(g)(1) (Count One); Unlawful Possession with Intent to Distribute

Marijuana, in violation of  21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count Two); and Using,

Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C.

§ 924(c)(1) (Count Three), Dkt. 1.  Jaffee was arraigned that same day, and, on April 1, a

detention hearing was held.  *See* Minute Entry (Apr. 1, 2019).  The magistrate judge ordered

Jaffee held without bond, finding by clear and convincing evidence that no combination of

conditions could reasonably assure the safety of the community if he were released.  Dkt. 7.

Jaffee has now moved to revoke that pretrial detention order.  Dkt. 9; 18 U.S.C.

§ 3145(b).  The Court finds that, although Jaffee has met his burden of production in response to

the statutory presumption in favor of detention triggered by the § 924(c)(1) charge in this case,

the Government has still shown by clear and convincing evidence that no set of conditions exists

that would reasonably assure the safety of the community.  The Court will, accordingly, order

that Jaffee remain held pending trial.

## I.  BACKGROUND

Although discovery is not yet complete, the parties have provided the following materials

to the Court: body-worn camera footage from Officer Brenton Atkins, taken on the night of

October 14, 2019, Dkt. 15 Ex. 1; body-worn camera footage from Officer Joseph Prendergast

and Sergeant Maurice MacDonald, taken in the course of executing a search warrant on Jaffee's

residence on January 16, 2019, Dkt. 12 Ex. 1; and the search warrant and supporting affidavit for

the search of Jaffee's residence that same day, Dkt. 16-1.  These materials and the parties'

submissions show as follows:

On October 14, 2018, Metropolitan Police Department ("MPD") officers responded to a

call reporting a possible robbery at an apartment on Sixth Street, S.E., in Washington, D.C.  Dkt.

6 at 3.  Shortly after Officer Atkins activated his body-worn camera, another officer arriving at

the scene reported over the radio that he found "a clear apartment, but with blood and signs of a

struggle inside," and he instructed available officers to "canvass [the] surrounding blocks for

someone bleeding."  Dkt. 15 Ex. 1 (BA 21:37:54–21:38:01).  By the time Officer Atkins arrived

at a nearby corner, several MPD officers and medical personnel were attending to Jaffee in an

ambulance.  *Id.* (BA 21:43:08–16).  One of the officers told Officer Atkins that Jaffee was

"really trying to get away" and had "tried to get an Uber, but the Uber wouldn't take him."  *Id.*

(BA 21:43:36–40).  When Jaffee emerges from the ambulance and first appears on the footage,

he can be seen bleeding from the left side of his head.  An officer speaking with Jaffee indicated

that he "said [he] [was] assaulted by a man with a gun," *id.* (BA 21:45:01–03), during a private

"weed party" that Jaffee organized at an AirBnB—an opportunity to "share weed with each

other, [and share] different stuff that each other grows," *id.* (BA 21:54:56–21:55:12).  Jaffee first

explained that the event was "for fun" and unrelated to his work, *id.* (BA 22:02:42–44), but later

clarified that the event was in support of his "clothing company" and that, "every once in a

while, we come around and do these little weed gatherings to promote the clothes," *id.* (BA

22:31:45–50).  Jaffee reported that he invited approximately 20–30 people, *id.* (BA 22:02:19–

22), but that it was a private event attended by only a few people at any given time.  When asked

about a possible motive for the assault, Jaffee suggested that "maybe someone smelled some

weed on the street" or "who knows, maybe someone that was there has a friend who said

something to somebody [like] 'go rob this.'"  *Id.* (BA 22:30:15–25).  Jaffee added, "whatever

weed was there, the person with the gun probably took it" because "I'm assuming that's what

they came they for—to get some weed," *id.* (BA 22:00:31–43).  Jaffee also indicated that he had

hired a personal security guard named "Tunnel Vision" for the event but could not locate him

during or after the assault.  *Id.* (BA 23:35:16–32).  When asked why he required a personal

security guard for "just a group of friends meaning to have a party," Jaffee responded that

"whenever I move around, I have security with me" because it's "how I move; it's a part of my

lifestyle."  *Id.* (BA 23:40:20–34).

      During the extended encounter with the MPD, Jaffee had both a backpack and a large

black duffel bag.  A search of the duffel bag revealed clothes, plastic bags containing marijuana,

various types of paraphernalia, and numerous jars of a yellow liquid substance, which Jaffee

described as "compressed . . . marijuana."  *Id.* (BA 22:39:13–22:44:32).  Jaffee also revealed that

he was carrying "maybe $4,000" in cash.  *Id.* (BA 22:43:38–39).  Following the search of the

bags, Jaffee was arrested for "possession with intent to distribute" marijuana.  *Id.* (BA 00:02:32–

57).  Those charges were ultimately dropped but apparently formed the basis of the

Government's investigation into Jaffee and the search of his residence on January 16, 2019. *See* Dkt. 6 at 4. That search provides the basis of the charges at issue here.

Officer Joseph Prendergast was stationed behind Jaffee's house during the execution of the search warrant on January 16, 2019. Dkt. 12 Ex. 1. As the MPD entered through the front of the house, Jaffee exited through the rear onto a snow-covered back porch, dressed in a long-sleeve t-shirt and bare feet and holding a large brown parcel. *Id.* (JP 21:25:42–43). Officer Prendergast immediately ordered Jaffee to stop and shouted "hands!" Jaffee dropped the parcel and raised his hands. A woman then opened the back door, quickly retrieved the parcel, and shut the door before the MPD could intervene. *Id.* (JP 21:25:44–52). After the MPD placed Jaffee in handcuffs and informed him they had a warrant to search the home, Officer Prendergast asked Jaffee, "what were you trying to throw out?" Jaffee responded, "I just got back into town; I went to my P.O. box and picked up some boxes." *Id.* (JP 21:25:10–27). The MPD led Jaffee through the backdoor and into the kitchen, and Sergeant MacDonald asked Jaffee if there were "any firearms, anything like that" in the home. *Id.* (JP 21:27:14–16). Still handcuffed, Jaffee answered, "I believe that I had some friends staying here—I believe he left a firearm right there," gesturing towards what appeared to be an office area. *Id.* (JP 21:27:26–36). Sergeant MacDonald asked, "where?" and Jaffee responded, "I'm not sure actually—like I said, I'm not sure, I don't know—I'm not going to lie to you, I wasn't here—I just got back into town, I just flew in, I believe I had some friends staying here." *Id.* (JP 21:27:36–46). As Jaffee spoke, an MPD officer recovered a revolver in the area to which Jaffee had gestured. *Id.* (JP 21:27:51).

Several minutes later, an officer asked Jaffee, "what kind of gun is this?" Jaffee responded, "I have no idea because it's not mine. I've never seen—basically, my friend left here

he told me he left a gun he said—he—the basic words he left was, he said 'I left protection at the house.'" *Id.* (JP 21:29:51–21:30:00).  As an officer examined the firearm, and Jaffee added:

> I told you whose it is and who left it here.  You can grab their fingerprints
> off it.  I have not been in this house for a week.  I can show you a text
> message—Sir—can I show you a text message—that shows that they left
> protection in the house?  Because I'm not going to jail for a gun that's not
> mine and that's why I told you it was there.[1]

*Id*. (JP 22:03:43–56).  Jaffee then stated that he would be willing to give a DNA sample, reiterating, "That's not my gun.  I don't play with guns."  *Id*. (JP 22:04:01–04).  Later, Sergeant MacDonald asked Jaffee, "Did that gun have bullets in it?"  Dkt. 12 Ex. 2  (MM 22:49:51–53). Jaffee responded, "How do I explain to someone whose gun that is and why it got here?" and "I've been in California; haven't been here."  *Id*. (MM 22:49:56–22:50:08).  In addition to the firearm, the MPD recovered numerous marijuana plants and "edibles," Dkt. 6 at 4, manufacturing equipment, and hashish,  Dkt. 16-1 at 1, as well as "two parcels containing orange [five]-gallon contractor buckets containing nine heat[-]sealed bags with 9.9 pounds of green leafy substance," which was later confirmed to be marijuana, Apr. 24, 2019 Hrg. Tr. (Rough at 42:17–19).[2]  Jaffee was arrested.  *See* Dkt. 9-3 at 1.

The Government originally charged Jaffee in D.C. Superior Court with Unlawful Possession of a Firearm, and a D.C. Superior Court judge ordered Jaffee released on high intensity supervision on February 4, 2019.  *See id.* at 2–3.  According to the docket in that case, Jaffee was compliant with the conditions of his supervision, and his conditions were modified to remove a curfew requirement on March 5, 2019.  *Id.* at 3.  Eventually, the Government dropped

---

[1]  To date, neither party has produced the text message to the Court.

[2]  The Government acknowledged at the hearing that 9.9-pound measurement was likely the gross weight.  *See* Apr. 24, 2019 Hrg. Tr. (Rough at 42:20–22).

the D.C. Superior Court charges.  *Id.*  A federal grand jury, however, returned an indictment in this Court on March 8, 2019, charging Jaffee with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) (Count One); Unlawful Possession with Intent to Distribute Marijuana, in violation of  21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count Two); and Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1) (Count Three).  Dkt. 1.  Jaffee was arrested on March 27, 2019, *see* Dkt. 4, and the Government moved for Jaffee's detention pending trial, Dkt. 6.  At a detention hearing, the magistrate judge found "[b]y clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of any other person or the community" if Jaffee were released, and she accordingly granted the Government's motion for pretrial detention.  Dkt. 7 at 2.

Jaffee filed the instant motion to revoke that detention order on April 8, 2019.  The Court held hearings on the motion that same day and on April 24, 2019, and took the motion under advisement.  The parties made further submissions on April 25, 2019, *see* Dkt. 15, Dkt. 16, and on April 27, 2019, *see* Dkt. 17.  Trial is currently scheduled to commence on June 28, 2019.

## II.  LEGAL STANDARD

Under the Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, if a judicial officer finds after conducting a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial."[3]  18 U.S.C.

---

[3]   Because the Court concludes that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community," the Court need not consider whether Jaffee poses a flight risk under 18 U.S.C. § 3142.

§ 3142(e).  The Government bears the burden of proving "by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." *United States v. Salerno*, 481 U.S. 739, 750 (1987).  "The default position of the law, therefore, is that a defendant should be released pending trial."  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

"That default is modified, however, for certain[] particularly dangerous defendants."  *Id.* In particular, the Bail Reform Act creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure . . . the safety of the community if . . . there is probable cause to believe that the person committed" one of an enumerated list of crimes, including a violation of 18 U.S.C. § 924(c).  18 U.S.C. § 3142(e)(3).  For purposes of making that determination, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged."  *Stone*, 608 F.3d at 945 (citation omitted); *see also United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("[T]he indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community.").

Once triggered, "the presumption operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption."  *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).  "While the burden of production may not be heavy," *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016) (citations omitted), the defendant must proffer "at least some evidence" or basis to conclude that the case falls "outside 'the congressional paradigm'" giving rise to the presumption.  *Stone*, 608 F.3d at 945–46 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (finding that the presumption

"represents Congress's general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches" (quoting *Jessup,* 757 F.2d at 389)).  Notably, the defendant's burden is only a burden of production; the burden of persuasion remains with the government throughout the proceeding. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *see also Alatishe*, 768 F.2d at 371 n.14 (citing *Jessup*, 757 F.2d 378, but not deciding the question).

As then-Judge Breyer explained in an opinion that the D.C. Circuit has described as "extremely compelling it its rationale," *Alatishe*, 768 F.2d at 371 n.14, the presumption is not a "bursting bubble" that becomes devoid of all force once a defendant has met his burden of production, *see Jessup*, 757 F.2d at 382.  The presumption does "not vanish upon the introduction of contradicting evidence," nor does the burden of persuasion shift to the defendant. *Id.* at 383 (citation omitted).  Rather, even after a defendant carries his burden of production, the judicial officer must "keep in mind the fact that Congress has found that" those charged with the specified offenses are likely to pose a danger to the community.  *Id.* at 384.  In short, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court."  *Mercedes*, 254 F.3d at 436.

The Bail Reform Act also specifies the factors that the judicial officer must "take into account" in determining whether any conditions of release "will reasonably assure . . . the safety of any other person and the community."  18 U.S.C. § 3142(g).  In addition to the rebuttable presumption, the judicial officer must consider:  (1) "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance [or] firearm;" (2) the weight of the evidence against the defendant; (3) the history and characteristics of the

defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." *See id.*

Jaffee has moved to revoke the magistrate judge's detention order.  Dkt. 9.  Although the D.C. Circuit has not decided the issue, those courts considering the question have held that a magistrate judge's detention order is subject to de novo review by the district court, *see United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017) (identifying cases supporting this proposition from the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits), and this Court has previously held that review is de novo, *see United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

## III.  ANALYSIS

### A.      Probable Cause and Presumption

The Government contends, as it did before the magistrate judge, that Jaffee's indictment triggers the statutory presumption that no pretrial release conditions will reasonably assure the safety of the community.  Dkt. 17 at 4.  The Court agrees.  Pursuant to the Bail Reform Act, "it shall be presumed that no condition or combination of conditions will reasonably assure the . . . the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," among other offenses, "an offense under section 924(c)."  18 U.S.C. § 3142(e)(3)(B).  The indictment itself is sufficient to establish probable cause for purposes of invoking the presumption, *Smith*, 79 F.3d at 1210, and Count Three of Jaffee's indictment charges him with "Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)."  Dkt. 1 at 2.

The question, accordingly, is whether Jaffee has come forward with sufficient evidence to meet his burden of production, overcoming but not "bursting" the presumption of detention

based on that Count of the indictment.[4]  The Court concludes that he has.  Jaffee has offered

evidence that he immediately denied possessing the firearm in question.  In addition, Jaffee

argues "that he is neither a risk of flight nor any danger to the community" as shown by his

compliance with high intensity supervision for nearly two months while this case was pending in

D.C. Superior Court.  Dkt. 9 at 4.  The inquiry for the Court at this stage is not whether Jaffee is

correct on the merits of these contentions, but simply whether Jaffee has met his burden of

production.  The Court concludes that he has met that modest burden and that, as a result, "the

Court must . . . consider all of the factors set forth in section 3142(g)" to determine whether

detention is warranted.  *Hunt*, 240 F. Supp. 3d at 133.

**B.**     **Section 3142(g) Factors**

   1.     *Nature and Circumstances of the Offense Charged*

   The first factor requires the Court to consider "the nature and circumstances of the

offense charged," in general, and, specifically, whether "the offense is a crime of violence, a

violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled

---

[4]     Although the presumption doubtless applies here, there is some confusion as to the
Government's statutory basis for seeking a detention hearing in the first place.  In its initial
memorandum seeking pretrial detention, Dkt. 6, the Government moved for Jaffee's detention
pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and 3142(f)(1)(D).  *See* Dkt. 17 at 1.  The Government
has since clarified that it withdrew its request under § 3142(f)(1)(C) at the April 1, 2019
detention hearing on the grounds that § 3142(f)(1)(C) "did not apply because the illegal narcotic
charged is marijuana for which the maximum period of incarceration is five years."  *Id.*  Instead,
the Government sought to detain Jaffee "pursuant to 18 [U.S.C.] § 3142(f)(1)(A) . . . in light of
the charge of using, carrying, and possessing a firearm during a drug trafficking offense."  *Id.* at
2.  The Government's framing of the issue is puzzling because it omits reference to 18 U.S.C.
§ 3142(f)(1)(E), which makes clear that this case falls within the ambit of the Bail Reform Act.
That provision requires a judicial officer to hold a detention hearing "in a case that involves
. . . any felony that is not otherwise a crime of violence that involves . . . the possession or use of
a firearm."  *Id.* § 3142(f)(1)(E).  Therefore, regardless of whether Count Three of Jaffee's
indictment properly falls within § 3142(f)(1)(A)—and the Court expresses no view on that
question—§ 3142(f)(1)(E) applies here, so a detention hearing is plainly authorized.

substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1).  As noted above, even when the presumption created by a charged offense has been rebutted, it is "incorporated into the other factors considered by this Court in determining whether to grant a conditional release and is given substantial weight." *Ali*, 793 F. Supp. 2d at 391.

Here, the crimes charged are serious.  The government has established probable cause to believe that Jaffee committed crimes involving both a firearm and a controlled substance.  The Government, moreover, has established probable cause that Jaffee possessed a firearm in furtherance of a drug trafficking offense—that is, a crime that Congress has concluded poses a significant danger to the community.  *See* 18 U.S.C. § 3142(e)(3)(B) (identifying an offense under 18 U.S.C. § 924(c) as giving rise to a presumption of dangerousness).  The first factor thus weighs in favor of detention.

2. *Weight of the Evidence*

Next, the Court must consider the "weight of evidence" against Jaffee.  As the Court has explained, *see Taylor*, 289 F. Supp. 3d at 66, the "weight of the evidence" factor does not focus on the evidence of danger to the community or the evidence of risk of flight; rather, it requires that the judicial officer consider "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2).  Fairly read, that means the evidence of guilt—not evidence of dangerousness or risk of flight.  Indeed, because the fourth factor separately requires that the judicial officer consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," 18 U.S.C. § 3142(g)(4), reading the second factor to turn on evidence of dangerousness—as opposed to evidence of guilt of the crimes charged in the indictment—would therefore run afoul of the canon against superfluity.  *See Marx v. General Revenue Corp.*, 568 U.S. 371, 383–85 (2013); *Bilksi v. Kappos*, 561 U.S. 593, 607–08 (2010). At the same time, however, the Court recognizes that the Bail Reform Act does not purport to

authorize pretrial detention based on only a preliminary assessment of the defendant's guilt, nor could it do so consistent with due process.  Rather, the statute "narrowly focuses on a particularly acute problem in which the Government interests are overwhelming"—as applied here, "the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person."  *Salerno*, 481 U.S. at 750.  Understood in light of these principles, the second factor weighs in favor of pretrial detention "[i]f the government possesses [substantial] evidence that the defendant is guilty of the crime charged . . . *and* the nature of the charged offense involves a danger to the community."  *Taylor*, 289 F. Supp. 3d at 66 (emphasis added).

Without passing judgment on the ultimate merits of the case, the weight of the evidence against Jaffee as to the first two counts of the indictment appears substantial at this early stage of the proceeding.  As the Government made clear at the detention hearing, it intends to rely on a theory of "constructive possession" to prove Count One, Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).  *See* Apr. 24, 2019 Hrg. Tr. (Rough at 12:22–13:7).  Under that approach, the Government will be required to prove beyond a reasonable doubt that Jaffee "knew of, and was in a position to exercise dominion and control over, the [firearm]."  *United States v. Littlejohn*, 489 F.3d 1335, 1338 (D.C. Cir. 2007) (quoting *United States v. Byfield*, 928 F.2d 1163, 1166 (D.C. Cir. 1991)).  Recognizing that the case remains at in its early stages and that the defense has not yet had the opportunity to raise any evidentiary objections, the evidence produced to date is substantial.  The firearm was found in Jaffee's residence, it was accessible, and Jaffee acknowledged that he knew that the firearm was there.

The evidence produced to date supporting Count Two, Unlawful Possession with Intent to Distribute Marijuana, in violation of  21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), is also substantial.  Although the precise quantity of marijuana at issue remains uncertain, the Government represents that the search of Jaffee's residence uncovered "two parcels containing orange [five]-gallon contractor buckets containing nine heat[-]sealed bags with 9.9 pounds of green leafy substance."  Apr. 24, 2019 Hrg. Tr. (Rough at 42:17–19).   Even assuming that this estimate is of the gross weight of the contraband, it appears likely that the amount of marijuana recovered was beyond an amount for personal use.  The return on the search warrant also states that the Government recovered "papers, manufacturing equipment . . . [and] packaging," in addition to "marijuana [and] hashish."  Dkt. 16-1 at 1.

The strength of the Government's case on the third count, however, is less clear.  To prevail on Count Three, the Government must prove beyond a reasonable doubt that Jaffee "use[d] or carrie[d]" the firearm "during and in relation to any crime of violence or drug trafficking crime," or "posesse[d] a firearm" in "furtherance of any [drug distribution] crime." 18 U.S.C. § 924(c)(1)(A).  There is no evidence in the record that Jaffee "use[d] or carrie[d]" the firearm in question; the Government instead relies on a theory of "constructive possession."  To convict Jaffee on Count Three, accordingly, the Government must show that the "constructive possession" was "in furtherance of" his distribution of marijuana.

As the D.C. Circuit has explained, "[t]he 'in furtherance of' language of § 924(c) means that 'the weapon must promote or facilitate the crime.'"  *United States v. Gaston*, 357 F.3d 77, 83 (D.C. Cir. 2004) (citing *United States v. Wahl*, 290 F.3d 370 (D.C. Cir. 2002)).  To assist in this inquiry, the D.C. Circuit has "identified a multi-factor test, including 'the type of drug activity conducted; accessibility of the firearm; type of firearm; whether the firearm is stolen;

13

whether the possession of the firearm is legal or illegal; whether the firearm is loaded; the proximity of the firearm to the drugs or drug profits; and the time and circumstances under which the firearm is found.'" *United States v. Kelly*, 552 F.3d 824, 832 (D.C. Cir. 2009) (quoting *Wahl*, 290 F.3d at 376); *see also United States v. Ceballos–Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000).

The current record does not reflect whether the firearm was stolen; whether it was registered in the name of a third-party; or even whether it was loaded. It was, however, apparently stored in an accessible location; it was in close proximity to products and equipment allegedly associated with drug trafficking; and, as a convicted felon, it was illegal for Jaffee to possess—or constructively to possess—the firearm. There is also evidence that Jaffee was assaulted while hosting a "weed party" and that, after the assault, someone left the gun at his residence and reported that he "left protection." On the other hand, the Government has not controverted Jaffee's assertion that he had only recently returned to the house from California, and the Government has not proffered any evidence that Jaffee ever handled or used the firearm.

The burden is on the Government to establish a nexus between the firearm and drug trafficking, and it suffices for present purposes to conclude that the strength of the Government's case as to Count Three is unclear. Because the weight of evidence is—at this preliminary juncture—substantial only as to the Counts One and Two, and because it is Count Three that raises the most serious threat to community safety, the Court finds that the second factor does not tip decidedly in either direction.

3.      *History and Characteristics of the Defendant*

The third factor requires the Court to consider (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal

history, and record concerning appearance at court proceedings; and (2) whether, at the time of

the current offense or arrest, the defendant was on probation, on parole, or on other release

pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or

local law.  18 U.S.C. § 3142(g)(3).

On the one hand, Jaffee has multiple prior convictions for possession and distribution of

controlled substances, in particular, heroin, cocaine, and hydromorphone.  Dkt. 3 at 3.  He also

has a conviction for aggravated battery for which he served a term of eight months incarceration

(apparently after a probation violation) and five years of probation.  *Id.* at 4.  On the other hand,

Jaffee represents that the multiple convictions for drug possession and distribution stem from a

single investigation, and he argues that, accordingly, the multiple offenses "are more properly

considered as one course of criminal conduct."  Dkt. 10 at 2–3.  The aggravated battery

conviction, moreover, is dated; his counsel represents that it stems from an assault that occurred

when Jaffee was 15 years old, nearly two decades ago.  Dkt. 9 at 3–4.  When asked for more

information, Jaffee's counsel could not provide any details of the underlying event.  *See* Apr. 24,

2019 Hrg. Tr. (Rough at 39:17–19).  Although this conviction for a violent crime is troubling, the

Court will not—in the absence of any further details—place any weight on an unspecified

altercation that occurred when Jaffee was a juvenile.  The Court, accordingly, is left with Jaffee's

prior drug offenses.  Unlike Jaffee's aggravated battery conviction, his drug convictions are

relatively recent—it appears that he was released from prison within the past few years.

Moreover, even treating the separate convictions as the product of a single investigation, the

offenses were serious ones which posed a danger to the community.  The Court, accordingly,

finds that the third factor weighs modestly in favor of detention.

4.       *Nature and Seriousness of the Danger to Any Person or the Community that Would Be Posed by the Defendant's Release*

The final factor the Court must consider is the "nature and seriousness of the danger to . . . the community that would be posed by [Jaffe's] release."  18 U.S.C. § 3142(g)(4). Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope.  For one thing, it requires that the Court to engage in an open-ended assessment of the "seriousness" of the risk to public safety.[5]  Although a close question, the Court finds that the fourth factor weighs in favor of pretrial detention.

The current record reflects the following: in both October 2018 and January 2019, Jaffe possessed marijuana, marijuana "edibles," and marijuana paraphernalia in quantities suggesting that he was engaged in illegal distribution.  During an event that Jaffe hosted in October 2018, where he apparently possessed substantial quantities of marijuana and had $4,000 in cash, he was violently assaulted.  Jaffe himself speculated that the assailant stole quantities of marijuana and likely attacked him "to get some weed."  In planning the event, moreover, Jaffe had hired a security guard—a precaution he takes "whenever [he] move[s] around" as "part of [his] lifestyle."  Following that violent assault, a friend stayed in Jaffe's residence—where, again, Jaffe apparently possessed manufacturing materials and quantities of marijuana suggesting that he was engaged in illegal distribution—and the friend left a firearm that he described as "protection."  These circumstances, along with the (non-bursting) presumption that those charged with the use of a gun in the commission of a drug offense pose a danger to the

---

[5]   Although not relevant for the present motion, unlike factor two, factor four allows "consideration of evidence [that might be] suppressed for purposes of trial when assessing 'the nature and seriousness of the danger' to the community that would be posed by the defendant's pretrial release."  *Taylor*, 289 F. Supp. 3d at 70.

community, 18 U.S.C. § 3142(e)(3), convince the Court that Jaffee's release would pose a risk to community safety.

At oral argument, Jaffee's counsel argued that, on the "spectrum" of § 924(c) cases, Jaffee poses little danger compared to the archetypical "drug trafficking case where a person selling drugs has a gun tucked in their waistband."  Apr. 24, 2019 Hrg. Tr. (Rough at 39:9–19). But even accepting that distinction, constructive possession of a firearm by a convicted felon for "protection" related to illegal drug distribution, following a violent altercation, raises a serious risk to community safety.  *Cf. United States v. Singleton*, 182 F.3d 7, 15 (D.C. Cir. 1999) (observing that holding felon-in-possession offenses to not trigger a statutory presumption of dangerousness nevertheless did "not deprive the government of an opportunity to detain armed felons when other circumstances warrant" such detention).

The Court, accordingly, finds that the fourth factor weighs in favor of pretrial detention.

## C.     Weighing the Bail Reform Act Factors

As explained above, three of the four factors weigh in favor of continued detention, and one factor does not tip decidedly in either direction.  Each of the factors is individually a close issue, however, and Jaffee's motion, accordingly, presents a close question.  On balance, however, the Court finds that the Government has met its burden of establishing by clear and convincing evidence "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community."  18 U.S.C. § 3142(e).

At this early stage of the case, the Court is necessarily deciding this question based on a limited universe of information.  Should additional evidence come to light, Jaffee may renew his motion at that time.  Until then, however, the Court concludes that Jaffee must remain detained pending trial.

## CONCLUSION

For the reasons explained above, Defendant's Motion for Bond, Dkt. 9, is hereby

**DENIED.**

      **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  May 1, 2019