**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 19-cr-88 (RDM)** |
| | : | |
| **v.** | : | |
| | : | |
| **BRENT JAFFEE,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**SECOND RENEWED BOND REVIEW MOTION[1]**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to the defendant's Second Renewed Bond Review Motion.  As grounds for this Opposition, the United States states as follows.

I.      **PROCEDURAL BACKGROUND**

On May 1, 2019, the Court issued a detailed Memorandum Opinion and Order denying the defendant's Motion for Bond (hereinafter "Memorandum Opinion and Order") [Doc. 21].  The Court reviewed the facts and evidence that had been presented to the Court and acknowledged that discovery was not yet complete.  Memorandum Opinion and Order at 2-6.  The Court found that the Indictment triggered the statutory presumption pursuant to 18 U.S.C. § 3142(e)(3)(B), but that the defendant had met his burden of production overcoming the application of that presumption. Id. at 9-10.  Thus, the Court reviewed the factors pursuant to 18 U.S.C. § 3142(g) to determine whether the defendant should be detained.  Id. at 10.

---

[1]      Due to connectivity issues experienced by government counsel, the government respectfully requests to file its Opposition 20 minutes late.

Additionally, the Court found that the nature and circumstances of the offense were serious because the government established by probable cause that the defendant was involved in the offense of possession of a firearm in furtherance of a drug trafficking offense. Thus, the first factor weighed in favor of detention. Memorandum Opinion and Order at 10-11.

Regarding the second factor, the Court found that the weight of the evidence appeared to be substantial for the first two counts of the Indictment. Based on a constructive possession theory, the recovered firearm was found in the defendant's residence, he knew it was there, and it was accessible to him. Id. at 12. Additionally, the quantity of marijuana recovered far exceeded personal use amounts. Id. at 13. Because the Court concluded that the weight of the evidence was unclear for Count Three of the Indictment, ultimately the Court deemed the overall weight of the evidence to be neutral. Id. at 14.

The Court found that the third factor, the history and characteristics of the defendant, modestly weighed in favor of detention. Id. at 14-15. Finally, the fourth factor, the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, was a close factor that weighed in favor of pretrial detention. Id. at 16-17. Because the case was in its early stages and discovery was not yet complete, the Court stated that the defendant could renew his motion for bond should additional evidence become known. Id. at 17.

Thereafter, during a status hearing on June 17, 2019, the defendant orally renewed his motion for bond. See Minute Entry, June 17, 2019. On June 18, 2019, the government filed an opposition to that oral motion [Doc.30]. On June 20, 2019, the Court issued an Order denying the defendant's renewed bond motion [Doc. 31]. On June 29, 2019, the defendant filed a Supplemental Motion for Bond Review [Doc.43]. On July 2, 2019, the Court issued a Minute

order denying the defendant's Supplemental Motion for Bond and referenced its May 1, 2019, Memorandum Opinion and Order and June 20, 2019, Minute Order.  See Docket Entry July 2, 2019.  The Court further stated that "the government [had] met its burden of establishing by clear and convincing evidence 'that no conditions or combination of conditions will reasonably assure the safety of any other person and the community.'"  Id.  Thus, "absent 'additional evidence . . . that would *substantially* affect the Court's analysis[,]'" there would not be a basis to revisit the Court's decision on bond.  Id. (emphasis added).

On September 24, 2019, the defendant filed a Renewed Bond Review Motion [Doc. 48]. The defendant asserted that he had additional evidence that the Court should consider that likely will result in the suppression of evidence and his statements that he made to law enforcement, specifically that (1) the defendant's fingerprints were not recovered from the firearm; (2) the defendant's statements to law enforcement on January 16, 2019, are likely to be suppressed because the defendant was not advised of Miranda warnings; (3) the date on the Redfin photograph referenced in the Affidavit in Support of the Search Warrant post-dates the Search Warrant; and (4) the reference in the Affidavit in Support of the Search Warrant that the affiant  reviewed a database which showed that the defendant had utilities registered to the address was incorrect because all utilities were in the landlord's name.

The government filed a written opposition to the defendant's Renewed Bond Review Motion, arguing that three of the four factors pursuant to 18 U.S.C. § 3142(g) weighed in favor of detention, and that the additional evidence proffered by the defendant would not substantially affect the Court's analysis as set forth in its May 1, 2019, Memorandum Opinion and Order [Doc. 50].

During a Status Hearing on October 17, 2019, the Court heard additional argument on the defendant's Renewed Bond Review Motion.  The Court orally denied the defendant's Renewed Bond Review Motion and found that the defendant should remain detained pending trial.  The Court considered and weighed each factor under § 3142(g) and found that the first factor, the nature and circumstances of the offense, remained unchanged.  The Court further found that the second factor, the weight of the evidence against the defendant, could be changed depending on the outcome of the hearings on the defendant's pending motions.  Regarding the third factor, the defendant's history and characteristics, the Court found that it tipped in favor of detention based upon the information in the United States Probation Office's Pre-Plea Guideline and Criminal History Calculation Report.  The Court acknowledged that although the violent crime information was dated, it still was important to consider.  Finally, the Court found that the fourth factor, the nature and seriousness of the danger to any person or to the community, remained unchanged.

On March 19, 2020, the defendant filed a Second Renewed Bond Review Motion [Doc. 73].  The defendant requests the Court to reconsider his bond status and release him into the High Intensity Supervision Program (hereinafter "HISP") based upon several developments when considered in conjunction with prior arguments by the defendant for release.  See Second Renewed Bond Review Motion at 1.  The defendant contends that (1) the DNA analysis yielded uninterpretable results and therefore the government cannot connect the firearm to him through DNA; (2) additional information suggests that the evidence was seized in violation of the Fourth Amendment; (3) since the Court's denial of the defendant's Renewed Bond Review Motion, it has learned that the affidavit in support of the warrant and the warrant were altered after it was signed by the judicial officer; and (4) the close contact and conditions of incarceration have been rendered

4

unsafe by the pandemic based on COVID-19 which pose a substantial risk of serious illness or possible death to the defendant.  Id. at 1-3.  Regarding the defendant's fourth argument, he further contends that it is "virtually impossible" for the District of Columbia Department of Corrections (hereinafter "D.C. DOC") to engage in the recommended basic preventive measures and that its staff is incapable of following the CDC's guidance.  Id. at 9.  Regarding the defendant's first three contentions, he has failed to advance any new information or arguments that would substantially affect the Court's analysis under the § 3142(g) factors.  The defendant's fourth argument is based upon speculations about the D.C. DOC.  While we recognize the dangers and seriousness of the COVID-19 pandemic, at this time it does not constitute a changed circumstance that would warrant modification of the defendant's bond.

## II.   ARGUMENT

When reviewing the propriety of pretrial detention, the district court must consider four factors:

> (1) [t]he nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance, [or] firearm;
>
> (2) the weight of evidence against the person;
>
> (3) the history and characteristics of the person, including -
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The defendant's four arguments advanced in his Second Renewed Bond Review Motion do not affect the first factor, the nature and circumstances of the offense. Thus, this factor remains unchanged and weighs against the defendant.

The first three arguments by the defendant regarding the DNA Report, that evidence was seized in violation of the Fourth Amendment, and that the affidavit in support of the arrest warrant and warrant were altered, relate to the second factor, the weight of the evidence. The DNA Report results for the firearm are uninterpretable. However, this is akin to the defendant's fingerprints not being recovered from the firearm. As the government previously argued regarding the lack of fingerprint evidence connecting the defendant to the firearm, while it does not advance the government's theory of constructive possession, it also does not substantially undercut that theory. The government must prove that the defendant knew of and was in a position to exercise dominion and control over the firearm. The firearm was recovered in the home that the defendant leased. The defendant was the sole lessee of that home when the search warrant was executed. The firearm was found in the kitchen area close that the defendant could access. Furthermore, the government has not proffered any evidence that the defendant handled or used the firearm. The lack of DNA evidence connecting the defendant to the firearm does not alter the facts that the firearm was found in Jaffee's residence and was accessible to him.

The defendant's contention regarding the alleged Fourth Amendment violations was raised in his Renewed Bond Review Motion. The government adopts and incorporates herein its arguments set forth in its Opposition to the Defendant's Renewed Bond Review Motion [Doc.50]. Additionally, at this time the defendant's motions are pending and hearings are scheduled in June

2020.  Until the Court conducts the hearings and renders decision on the defendant's pending motions, this consideration remains unchanged.

Regarding the alteration of the some of the dates on the search warrant, this also remains a pending motion which the Court will hear evidence during the June 2020 motions hearings.  As stated in the government's Opposition to the Defendant's Motion to Dismiss Indictment for Due Process Violations, which the government adopts and incorporates herein, the government's Notice to the Court was not an admission that a government agent altered the search warrant documents.  Furthermore, the Notice to the Court did not state that any changes were made to the Affidavit in Support of an Application for a Search Warrant.  The Notice to the Court provided information that the Court requested.  The government's Notice to the Court does not constitute admissions that a government agent, either the Affiant or the USAO support staff member, altered the search warrant documents.  The Affiant's beliefs and assumptions and the USAO support staff member's denials of making the changes are not admissions that either of them made the changes.  Moreover, there is a process for search warrants that involves individuals who could have had access to the search warrant documents and it is unknown whether anyone else involved in that process could have made the changes.  Thus, currently this does not change the second factor.

The third factor, the defendant's history and characteristics, remains unchanged because the defendant has not advanced any arguments to be considered under this factor.

As set forth below, the defendant's arguments regarding the COVID-19 pandemic is reviewed under the fourth factor, the nature and seriousness of the danger to any person or to the community which would be posed by the defendant's release.  While the COVID-19 pandemic is

dangerous, it is not a changed circumstance that necessitates a modification of the defendant's bond.

While the risk of COVID-19 is real, the defendant does not provide a meaningful nexus between the virus and himself. Nor does the defendant cite to any presumptive positive cases reported within facilities operated by the District of Columbia Department of Corrections (hereinafter "D.C. DOC").  Notwithstanding the government's repeated requests for detention based upon the danger the defendant presents to the community-at-large, the defendant fails to address how his release will prevent, rather than expose him to, illness. For these reasons, the defendant's argument is not actually a changed circumstance and is not ripe for reconsideration.

For the limited purposes of this opposition, the government accepts the statistics cited by the defendant.  Here, the defendant likens his preventative detention to situations presented in other countries, without context.  Moreover, the defendant demands his release, but provides no evidence as to how his release into the community that is already affected by the virus will protect him any more than his current placement at the Department of Corrections.

This office has consulted with the D.C. DOC to obtain relevant information as to its handling of the public health crisis.  Based upon this information, it appears that D.C. DOC is handling the situation as well as it can – no different than any organization in the United States. Moreover, the D.C. DOC is fully committed to protecting its inmates.

Specifically, the D.C. DOC has done the following to ensure the safety of its incarcerated population: (1) banned all non-attorney visits to limit unnecessary exposure; (2) implemented screening processes for all visitors and incoming inmates, including attorneys and staff; such screening includes assessing visitors and inmates for symptoms, sanitizing stations, etc.; (3) if

incoming residents at a D.C. DOC facility fail the screening process, they are given a mask and taken to medical to determine whether they require further hospitalization or testing. Moreover, if there is concern that an inmate has COVID-19, the inmate will be placed into a single cell in a specialized unit where the inmate's only contacts are with medical staff who will obtain COVID-19 testing within 3-4 days; (4) the D.C. DOC has implemented an incident command program where each day the D.C. DOC units meet to discuss ongoing processes to combat the virus; (5) the D.C. DOC sends out daily reminders to its staff about taking preventative, prophylactic measures to avoid infection, such as washing hands, using sanitizer, etc.; (6) the D.C. DOC has constant meetings with the District of Columbia Department of Health to ensure its procedures meet both local and national standards, to include following updated recommendations of the Centers for Disease Control; (7) the D.C. DOC has continued to engage with the USAO and the local Public Defender Service to ensure continuity of operations; (8) the D.C. DOC checks and rechecks its ventilation system to ensure the air quality in the facilities; (9) the D.C. DOC is tracking and ordering additional cleaning and sanitation kits (for example, as of March 17, 2020, the D.C. jail had 55,200 bars of fresh soap), as well as protective gear; (10) the D.C. DOC is working with Metropolitan Police Department of the District of Columbia to limit the number of inmates coming into its facility at any given time; and (11) the D.C. DOC has the capacity to quarantine approximately 100 inmates, if necessary. Finally, and perhaps most importantly, as of the writing of this opposition, there are no known inmates in custody with the D.C. DOC who have yet tested positive for the virus. While the government shares the defendant's concerns over the health of the inmates, there is fortunately no evidence yet that the illness has endangered the lives of those within the D.C. DOC facilities. Thus, the defendant's request is both premature and speculative.

In any event, even assuming the D.C. DOC may ultimately become affected (which is unfortunately probable), there is nothing right now that suggests the defendant's particularized health necessitates his release. The defendant stands accused of serious felony offenses, and as previously argued by the government, his criminal history supports that he is a danger to the community.

As of March 19, 2020, multiple litigants have filed similar motions before the district court. On March 17, 2020, Judge Paul Grimm of the United States District Court for the District of Maryland, Southern Division, issued a written memorandum opinion on this very issue. United States v. Martin, 2020 WL 1274857, *2 (D. Md. March 17, 2020). Noting, appropriately, that the Court "takes this [COVID-19] health risk extremely seriously," the Court nevertheless recognized that "resolving . . . an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act." Id. at *3. In addressing the new issue raised by the defendant – COVID-19 – the Court nevertheless found that the defendant's health (his asthma, high blood pressure, and diabetes) was "insufficient to rebut the proffer by the Government that the correctional and medical staff at [the local detention facility] are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus." Id. at *4.  Finally, the Court questioned the application of location monitoring even if the defendant was released subject to conditions, finding that such monitoring "is not a limitless resource, nor its installation and monitoring by United States Pretrial Services officers without risk to those personnel . . . given the current recommendations regarding implementation of social distancing." Id.

The government appreciates the gravity of this global pandemic and is committed to ensuring the safety and health of inmates like the defendant. And should circumstances change at the D.C. DOC, the defendant may request reconsideration. But at this stage and at this time, the D.C. DOC appears dedicated and willing to address this public health crisis. Given the plans in place at the D.C. DOC, the lack of any confirmed cases, and the danger that the defendant represents to the community, the same community also affected by this illness, the government respectfully requests that this Court deny the defendant's Second Renewed Bond Review Motion.

**WHEREFORE**, for the foregoing reasons and for any other such reasons as may appear to the Court, the government respectfully requests that the Court deny the defendant's Second Renewed Bond Review Motion.

Respectfully submitted,

TIMOTHY J. SHEA
United States Attorney
D.C. Bar No. 437-437

By:	_____/s/_____
Karla-Dee Clark
Assistant United States Attorney
D.C. Bar No. 435-782
555 4th Street, N.W., Fourth Floor
Washington, D.C. 20530
202-252-7740
karla-dee.clark@usdoj.gov

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by email upon counsel for the defendant, Nikki Lotze and Joseph Caleb, via the Court's eService Filing System, on this 20th day of March, 2020.

By:      _____/s/_____
         Karla-Dee Clark
         Assistant United States Attorney